Your Honor, the first case of the morning, call 209-1310. You can say Bill Noye v. Joseph Trimarco. On behalf of the FLR, Mr. Stephen J. Kline. On behalf of the FLE, Ms. Victoria B. Jones. Mr. Kline? Good morning. As the appellate, I would ask to request five minutes for rebuttal, please. You have rebuttal time, sir. Thank you, Your Honor. May I proceed? Yes, you may proceed. May it please the Court, my name is Steve Kline and I'm the attorney for the appellate, Joseph Trimarco. In this case, we have appealed a conviction for driving under the influence of alcohol. And the issue which we brought before Your Honors is whether or not, given the fact there are no field sobriety tests, no chemical tests, and all the consistencies in the statement, in the witness' testimonies, whether or not there was enough evidence to find my client, Joseph Trimarco, guilty beyond reasonable doubt. Do you need field sobriety tests and chemical tests to find someone guilty for driving under the influence? Absolutely not, Your Honor. However, the lack of evidence is something that can be looked at and can be viewed as well as the addition of what evidence there is out there. And the reason why I bring up the lack of this objective evidence, like field sobriety and chemical evidence, is really what it does is polarize all the other circumstantial evidence in this case. Let me ask you this. On review from a finding of guilty, what is the standard? The standard is whether any rational trier fact can find the defendant guilty, viewing the evidence in the light most favorable to the prosecution. The case of People v. Smith, which I've said in my brief, further elaborates whether the evidence is so unreasonable, so improbable, so unsatisfactory that they cannot justify finding the defendant guilty. And I believe that's what we have here. And the reason why it's so unsatisfactory and so improbable is because of all the inconsistencies on material issues between the witnesses. Isn't that a matter for the trier effect? As you know, on a Peo, we're not entitled to retry the defendant. It's up to the trial court to weigh the credibility and believability of the witnesses and the weight to be given to the testimony, as well as weigh the inconsistencies. Do you agree with that? I do agree with that. However, if I might add, the court is not simply absolutely bound by the trial court's decisions on credibility. And sometimes trial courts can be wrong. And there are plenty of cases, tons of cases, that are overturned based on lack of evidence. It happens every day in the appellate court. And I believe, and I strongly believe, this is one of those situations. Well, let me summarize the evidence as I understand it. Your client drives off the road and ends up in a ditch. Your client, two officers testify. His eyes are bloodshot. He's got slurred speech. There's a problem with his balance. He smells of alcohol. And he says, I'm drunk. Correct? He also said he thought he was in Wheaton when he was in Coindale Heights. Correct? That's correct, Your Honor. However, there are, simply looking at it in that way, you have to open it up and you have to look at some of these issues. Let's start with the driver. All three witnesses had different recollections as to where the car was. And, in fact, the client may have been. But wasn't the car just clearly off the road? There's no other explanation for how the car got to where it was. Well, there actually are two explanations that were introduced in the trial court. One of the explanations was given by my client, Mr. Tremarco, who said he was driving or was coming at him. Another explanation was given by Officer Cahill. So there were two explanations. Nonetheless, the car is off the road. And there's an absence of tire marks that would indicate evasive action was taken. Isn't that also correct? Your Honor, all three witnesses are inconsistent on that issue, so I simply cannot answer that question. One of the witnesses says it's off the road. One says it's on the side of the ditch. One says the car is leaning. The other one says the car is not leaning. One says it's in the middle of the ditch. But it's just as Hudson asked you about. Trial judge listens to all the witnesses. It's the trial judge's determination as to the weight to be given to the evidence, trial judge's obligation to resolve any conflicts in the testimony. Where can we, can you point to, to direct us that the findings made by the trial court cannot be sustained? Very easily, Your Honor. To the witnesses' testimonies and to all the inconsistencies. I want sped up. Okay. Okay. Give me specifics as to why what the trial judge did cannot be sustained. Well, let's talk first about the snow issue because that is a huge issue because that's probably the biggest inconsistency between the statements as well as the fact that heavy snow in a case is going to affect one's ability to drive. It's going to affect one's balance, especially since there's a lot of evidence that he fell or was having trouble walking. Sheriff Saruba was swamped with calls that evening so much that he had to step down from his command post as the head sheriff of DuPage County and drive out to this actual scene, which means that no one else could help this situation besides Sheriff Saruba, meaning there's so many calls out there. He arrives at the scene. He says there's three to four inches of snow on the ground. Now, let's take Officer Cagle's testimony. He was the third officer to testify. He testifies there's zero snow on the ground, none at all. Now, didn't he testify there was no snow left on the road as opposed to on the side of the road? Wouldn't that make sense? Cars drive and the snow is melted as it's falling, but yet it accumulates on the side of the road? You are correct, Your Honor. I'm talking about on the actual road. Officer Cagle said there was no snow on the road. Sheriff Saruba said there were three to four inches of snow on the ground, on the road. Counsel, notwithstanding that, it strikes me. Let's assume that your client's car hadn't been in the ditch.  Okay. And you got the testimony of two experienced officers that your client smelled of alcohol. His eyes were bloodshot and glassy. He had poor balance. He had to be held up. And he said, quote, unquote, I was drunk. Isn't that a sort of a pretty powerful piece of evidence? The motives with all those corroborating, you know, testimonies saying I am drunk? Why would a trier of facts, why would that be insufficient to find somebody guilty? You keep pointing to inconsistencies. How do you argue against the weight of all those factors I just gave you? Don't they point to intoxication? Let me first address, Mark, the issue of the drunk because I am prepared for this. I do understand that, how Your Honors could see how that's such a strong part to the state's case. However, only one witness said that he said that. And it's our position that that witness, Officer Cagle, is the least credible out of all the witnesses. So it really goes to the weight of the testimony. When you have Officer Cagle say there was no snow on the road, on the ground or on the road next to the car. Regarding the balance, he's exiting his car into about six to eight inches of snow. That's difficult for any person to walk in. Sheriff Saruba said he saw no problems with him walking through that snow. Officer Dedrick said he had no problem, the defendant had no problems leaving his car or when they brought him to the road and then he went back to the car. No problems walking in the snow. But Officer Cagle essentially says he escorted them. These are two officers witnessing the same thing about five feet away, but such different recollections as to the balance. And this is a great example, Your Honor. So what would have to be cut to the chase is that Cagle is either lying or he's mistaken when he says your client said he was drunk. Absolutely, Your Honor. That is our position. And that wouldn't be up to the trial court to decide if the witness is believable. I disagree. And the reason why is his testimony was so inherently unreliable that the court erred in choosing his testimony. And that's our position, especially since Sheriff Saruba says three to four snow on the road and Officer Cagle no snow at all. It wasn't even snowing that day. Officer Cagle said it wasn't snowing that day, yet Sheriff Saruba has to leave his office and drive out there because he's got no one else to help and they were swamped with calls. So is it your position that if there's any inconsistencies between the testimony of the witnesses, the defendant would automatically win the case? Of course not, Your Honor. However, every case is different, case by case basis. In this specific case, because, and again, when you're looking at the driving, the balance, these observations, that's all there is. There's no any objective evidence. There's no ground test. There's no field sobriety test. But he refused the test, didn't he? Well, he did. What about the inference that we can draw from his refusal in consciousness of guilt? Are we talking about the breath test or the field sobriety test? Breath test. Okay. Well, first of all, he has no right to refuse. The state could have gotten, the police could have gotten a warrant pursuant to people B. Jones from the Supreme Court, 2nd District. They don't need a warrant. They could have compelled him to produce this blood. Now, I'm not saying that there cannot be an argument made, but this whole consciousness of guilt is, it doesn't necessarily A plus B equals C. If someone refuses a breath test, does that mean they automatically think they're guilty? I understand the state can make that argument and that inference can be drawn, but it's not automatic. There's lots of reasons why people can refuse breath tests. In fact, we have a very good reason in the record here. Clearly, the defendant was not happy with how the officers were treating him. He could have refused the breath test based on he didn't like it. Let me ask you a question. Is the defendant ever happy with the way officers treat him when he's arrested for driving under the influence? I'd like you to opine on that issue. Your Honor, yes. They are? Well, they're not happy they're arrested, but they're not necessarily holding it against the officer. And without divulging it too much, attorney, client privilege, I have presented with many times where they were happy with how they were treated. They felt the officer was nice and respectful. Clearly, that's not the case here. All I'm really saying is there are lots of reasons why people can refuse a breath test besides consciousness of guilt. That's true, but the law does, as you have acknowledged, allow the court to take an inference that it is consciousness of guilt. Yes, the law does allow to take that inference. However, it's not automatic, and that's my position here. I did in my brief indicate that it is a bit of a double standard in my belief that the state can use consciousness of guilt, which is a mental state, to prove a strict liability crime. Yes, the defense has no similar situation. If you try to intervene technically under the law, if someone goes to a party, drinks some punch, does not believe it has alcohol in it, drives home, gets arrested on a DUI, it's not a defense. Yet if someone refuses a breath test, it's automatically consciousness of guilt. It's a double standard. I understand the law allows it, but it's my position and I have a certain good faith that I do believe it is a double standard. Should we follow your position or should we follow the Supreme Court? Your Honor, you can choose which one to follow. I'm merely making my argument before your Honor because I strongly believe it is a double standard. I can't direct you on who to follow. Counsel, was there an interlocutory appeal in this case? I believe there was regarding the motion to suppress. And the motion to suppress was based upon double jeopardy or former jeopardy? I believe there were two issues. One of them was whether there was a legal seizure, and I believe double jeopardy was another of the issues. And that interlocutory appeal was dismissed as premature, was it not? Your Honor, I do not recall the – I do not handle that appeal, so I do not know too many specifics about it. Okay. So basically what we have here is when you have no those field sobriety tests, no breath tests, everything gets brought to the forefront. In addition to the inconsistency with the snow and the balance, I strongly believe the position of the car and that the judge was unfair to simply accept one version of it, especially Officer Capo's version, given the fact that he's probably the least credible of all the witnesses. Are you suggesting that there's two versions to every factual situation? In this case, Your Honor, there are three versions. Yes, but he chose one. The way you said it, it sounded like he was committed an error by choosing one. It sounded like you were saying he had to choose two. When you say he, are you referring to Officer Capo? The judge. The judge? Okay, I apologize. She's a she, so I just wanted to – She has one. Okay. She erred by choosing one over the other when there's really no other evidence to support it. I mean, this is circumstantial evidence. In any type of accident where you don't see where the accident occurred or any collision, you have to look at how the car's positioned. That's extremely important. And if the car's positioned right on the edge of the roadway, if the car's positioned in the ditch, like Sheriff Saruba said, if it's in the middle of the roadway, like Officer Capo, these are all important facts, and driving – it's driving under the influence of alcohol. Driving is an important factor. Plus, considering the fact that it's snowing so much there that Sheriff Saruba, like he said, had to go and handle – there's probably lots of other cars in the same predicament. So I do believe it really negates any argument that he had this problem because he was under the influence when very likely it could have just happened because of the snowfall. Again, I also want to address the issues of the balance, because balance is probably one of the more probative issues in a DUI case. But there's so many different versions. Sheriff Saruba said he saw the defendant walk away from the car with the two Glenda Heights police officers without any problems walking through the snow. Officer Cagle said he was escorting him. He had to grab him by the actual arm, bring him to the road. He had to grab him by the arm, bring him back to the car. And even Officer Zizek, who was there with him, disagrees with that. So when you're looking at the balance, especially when you look at Officer Cagle's testimony about what happened at the station, knocking the phone receiver off, everything he's saying is extremely biased against the defendant, so much to the fact that he believes he's under the influence – Officer Cagle believes the defendant is under the influence of alcohol even before he steps out of the car. So at trial, did the defendant admit or acknowledge to having made the statement, I was drunk? At the trial, he did not. He did not testify. So basically, we have the driving, where there's different situations, there's different testimonies to where the car was. Was it on the road? Was it off the road? We have very different testimonies about the balance. Fine balance, horrible balance, okay balance. We have the situation with the snowfall. Sheriff Zuber said it snowed three to four inches on the ground. Officer Zizek said it was a wet snow mixture. Officer Cagle says there's no snow. These are all huge inconsistencies. And without any other objective type of evidence, this is what the court is forced to look at. And – I see that my time is up. May I just wrap up, please? Thank you. What we have here is the trial court's chariot. She found the certain things that were bad and used those while ignoring everything else. So when you look at the totality of the witness's testimonies, all the inconsistencies on material facts, the judge's decision was unreasonable. It was based on inherent consistencies. And based on the fact that they were so unreasonable, improbable, and unsatisfactory, no rational trier fact could find my client guilty.  Good morning, Your Honors. Good morning. Counsel, may it please the court. Yes. All of the defendant's arguments involve issues and considerations of the way to give the testimony, the credibility of the witnesses, and reasonable inferences to be drawn from the evidence. And all of these determinations are within the trier fact in this case, was a trial judge, a bench trial. And this court should not review those matters. What about all of these alleged inconsistencies you've been alluding to? There are inconsistencies, Your Honor. However, they do not make any one witness's testimony wholly improbable. While there were inconsistencies, there were also consistencies of the evidence. Were those inconsistencies on the minor immaterial matters, such as the roadway, the snow, or did they go to the observations of intoxication? The people would suggest that there were consistent testimony as to the intoxication, and there were some inconsistent testimony as to intoxication, such as balance. You did have one officer who was directly with the defendant who said he had less balance than the other one who was standing nearby. However, they were consistent on the bloodshot glass, the eyes, the smell of alcohol, and the slurred speech. And Officer Cahill and Diedzik were also consistent on him falling as he crossed behind the car once he was on the roadway. So there were some consistencies within the balance. The trial judge found that Diedzik's explanation of the balance was less exaggerated, so she tended to believe him, but remarked that he also observed the defendant having trouble exiting the car and, again, losing his balance behind the car as he passed him. How many officers could the defendant admit he was drunk? Just one? Cahill? I believe one. I'm trying to remember if two of them heard whether or not he said how many beers he had at a bar. He said he had about four beers. It increased every time he said it, but I don't recall offhand whether it was he said it to one, said it to the other, said it back to the first one, or whether it was the same officer. If the number increased, did the quality or quantity decrease? He didn't specify. I believe he just said three beers, four beers, five. You said we shouldn't review these issues. Didn't you mean we shouldn't reweigh these issues? We shouldn't reweigh to retry the defendant. I'm sorry, Your Honor. Should not substitute the trial court's judgment. This case is not – I'm sorry. Have you ever seen the play Russian? No, I actually haven't. My high school did it a little bit before I got there. Counsel mentions Smith as why – the case of Smith as why this court should reweigh and reconsider the officer's testimony. However, in Smith you had a witness who claimed the defendant committed a murder. Her testimony on how that murder occurred conflicted completely with every other witness who was present at the scene. She was repeatedly impeached. She had a motive to falsely accuse the defendant, and her actions following the murder were absolutely incredible, as she just saw a murder happen, went to two bars, went home, and did nothing. So in that case you had a witness whose testimony was wholly incredible and could be rejected. The same does not apply to this case. As I mentioned, there were consistencies between the officer's testimony. Therefore, it did not leave the questionable parts of any one officer's testimony wholly unworthy of belief. What's the standard of review relative to beyond reasonable doubt? That any rational try or effect in light of – in favor of the people. Do you think Judge Creswell is a rational person? I would believe so in this. Under these circumstances? I don't know her in every case. I suggest you would be unwise to say anything else. Based upon those two statements, is there anything else you want to add? No, there is not. The only thing that I would say as far as the inference from a refusal is counsel keeps bringing up that this is a mental state. This is one piece of circumstantial evidence showing intoxication. Therefore, it would be like if I refused, you could infer that I'm perhaps hiding something because I don't want anybody seeing the numbers of that result. It's not inferring I had a mental state as to driving or drinking before I was driving. Otherwise, the people stand on the brief if there are any other questions. Thank you. Thank you. Have you ever seen the play Rashomon? No, I haven't. I'm sorry. I actually just want to bring up one point that may not be held against you. Thank you very much. You might experience it because it's basically a play about perspective. It's a play where it's seen through the eyes of the participants in the play. And so you come away with an understanding that as Sheriff Dore used to have a sign on his desk that said there are three sides to every story, yours, mine, and the facts. Rashomon suggests there may be four or five different sides to a story. And which one was the correct one at the end? They never tell you. That's for the rational trier of fact to be correct. One of the things I wanted to bring up that the State had mentioned regarding that Judge Creswell believed Officer Diedrich over Officer Kahle regarding the balance. As in saying, well, Officer Diedrich didn't pull any punches. He didn't exaggerate. So I tend to believe his testimony over Officer Kahle's. And this is regarding the balance, holding his arm, walking back to the car to grab the insurance. Yet she just automatically believes his statements, all Officer Kahle's statements about what happens at the station with the defendant's statements, with the counting the money, with the bond slip, with knocking the receiver off. But she doesn't believe him on this other issue. So how can you say, well, I don't believe him on this issue? Maybe his memory is wrong. Maybe he's mistaken. Yet fully just believe him on that other issue. It doesn't really make a whole lot of sense. And it's this type of sort of cherry picking that we believe that the trial court was wrong in this case. Couldn't Judge Creswell have completely disregarded what Kahle said, just pretending he didn't even testify, and there was more than sufficient evidence to convict your client based on the remaining testimony? The answer is respectfully no, Your Honor, because she's hearing the evidence. You can't just simply disregard what one person says.  That's evidence that not the defense introduced. That's not my point. The question is, had Officer Kahle simply never testified, wouldn't there have been more than sufficient evidence to convict your client? No, Your Honor. Because? The reason why is even without the consistencies, the amount of evidence or the level of evidence in which the state introduced did not rise to guilt beyond a reasonable doubt. No field sobriety tests, no chemical tests, and simply saying my client refused a breath test, they could have gotten a blood test. Nothing stopped them from that. There is no witnesses of driving. Without Officer Kahle's testimony, there's really no evidence of any impaired driving. He's the only person who suggested how the defendant's car got there. Officer Kahle had the most damaging testimony regarding escorting him, grabbing his arm, holding on to his jacket. He was the one who fully believed. So the answer is no, he's the most damaging testimony. If in a hypothetical nature you remove him, absolutely the defendant is not guilty beyond a reasonable doubt. Do Glendale Heights and Wheaton have a common border? Yes, sir. Whereabouts is that? The common border would be around, when you take County Farm to North Avenue. And the fact that this was unincorporated, as Mr. Ramsell pointed out in his argument, I do believe adds to the supposition that he's not, the fact that he's unincorporated makes it a little unclear where he is. And in DuPage County, there's no, you know, now you're entering Glendale and now you're leaving Carroll Street. You kind of just have to figure out where you are. I'm unfamiliar with the area and I never know where I am. So I think simply because he wasn't sure exactly. That's somewhat of a broad statement. There's a number of signs that tell you you are now leaving Glendale and you are entering Wheaton. But not in every single route. Not in every street, but I think that was somewhat of a broad statement. Well.  That is correct, Your Honor. Isn't it a contradiction or paradox to say that you're in unincorporated Glendale Heights when Glendale Heights is a corporation, a municipal corporation? How can you be in an unincorporated portion of an incorporated municipality? Because that's how they set them up. I'm not as familiar with corporations and land corporations. But I do know that the reason why this was determined is when you have the letter north or south. That's what indicates on an address whether it's a corporate or not. My response would have been everybody's got it somewhere. And that's a part of the play you did not see. Yes. I'd like to thank you all for this opportunity and would rest on the rest of my brief. Thank you very much. Case to be taken under advisement. We'll take a short recess.